Filed 1/31/23  P. v. Zile CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZACHARIAH ZILE,<br><br>    Defendant and Appellant. | D080382<br><br><br>(Super. Ct. No. FSB19002378) |

APPEAL from a judgment of the Superior Court of San Bernadino County, Michael Smith, Judge.  Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Deputy Attorney General, Randall D. Einhorn and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Zachariah Zile appeals a judgment following his jury conviction of murder.  On appeal, he contends the trial court erred by: (1) denying his motion to discharge a juror; and (2) failing to instruct the jury on

vehicular manslaughter with gross negligence as a lesser offense of murder. We reject these contentions and affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND

On the evening of July 9, 2019, Zile arrived at the home he shared with his girlfriend, April B. After the two of them ate dinner, they watched television and Zile ingested cocaine and drank Jack Daniels and Coke, and beer. Later that night, Zile said he was going to Apple Valley, where he had a lot of friends, and he wanted April to go with him. April refused to go, so Zile left by himself in his car around midnight.

Around 1:00 a.m., on July 10, 2019, Zile was driving his car westbound on the 210 freeway at a high rate of speed when he "wiped out" and slammed into the back of a SUV at the Highland Avenue Exit. Zile got out of his car, looked "out of it," and asked a witness, "What did I hit?" He smelled like alcohol and appeared drunk. He told another witness he was "f'd up," and was "on a gang of shit." He told a responding officer he had been drinking "tons" of rum and Coke or whiskey. Zile's performance on field sobriety tests was consistent with someone who is intoxicated. His blood sample tested positive for cocaine and showed a blood alcohol level of .185 percent. Zile also said he was driving between 80 and 100 miles per hour, that he did not know where he was coming from or what happened, because when you "hit another vehicle at 80 miles an hour and you're drunk, you don't know what exactly . . . happens."

Zile's car had major damage to the front end and the SUV had damage to the right back. The driver of the SUV, Sabrena G., was lying on the road about 10 to 15 feet from the SUV. She was having trouble breathing, but was able to communicate shortly after the accident. Sabrena ultimately died from

2

multiple blunt force injuries sustained in the accident, including internal bleeding, a collapsed lung, and a skull fracture.

Zile had previous DUI convictions in 2007 and 2010. In both cases, he signed a plea agreement containing a *Watson* advisement,[1] which stated, "If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder."

On July 11, 2019, the San Bernadino County District Attorney filed an information charging Zile with one count of murder. (Pen. Code,[2] § 187, subd. (a)). On October 7, 2021, a jury convicted Zile as charged. On January 7, 2022, the trial court sentenced Zile to state prison for 15 years to life. On February 4, 2022, Zile filed a notice of appeal.

DISCUSSION

I.

*Failure to Discharge Juror*

Zile contends the trial court abused its discretion when it failed to grant his motion to discharge a juror.

A. *Additional Factual Background*

Prior to opening statements by the parties, the trial court instructed the jury that "it's very, very important not to talk to anyone about the case, not to talk to anyone about any of the people involved in the case, including any of the attorneys, witnesses, or parties, and that includes not discussing it with any family members, friends, spiritual advisors, or anyone else." The

---

[1]    *People v. Watson* (1981) 30 Cal.3d 290.

[2]    All further statutory references are to the Penal Code, unless noted otherwise.

3

court further directed the jurors not to "let anyone talk to you about the case."

During the trial, the court was advised that a juror had communicated with an employee of the district attorney's office. Outside of the presence of the jury, the court convened a hearing in which K.F. testified that she was an executive assistant to the assistant district attorney, and that she was close friends with a juror and talked on the phone often. The juror called her on September 10, 2021, and suggested that they should have lunch. K.F. found out her friend was serving on a jury and she asked her friend the name of the district attorney. The juror did not know but said "it was a gentleman with a beard," and K.F. responded that it sounded like Deputy District Attorney Pierce. The juror said that she thought "the guy that was sitting next to D.A. Pierce was hot." The juror did not know who he was and that was the extent of their discussion.

Since that discussion, K.F. said they had a couple conversations about cookies and housewives. K.F. also said that the juror "never even said anything about what case she was on, the case. Nothing. Nothing." Neither the defense counsel nor the prosecutor had questions for K.F. The court then advised K.F. that it would be a good idea for her to avoid having any conversations with the juror until after the trial. K.F. apologized, saying, "We are really sorry. We just thought it was girl talk."

The court then questioned the juror about her conversation with K.F. The juror told the court that she mentioned to K.F. she was on jury duty and suggested they should have lunch if K.F. was available. The court told her it was a good idea to avoid further contact with K.F. until after the trial. Neither the defense counsel nor the prosecutor had questions for the juror.

4

After the juror was excused, defense counsel stated that he risked alienating the juror if he asked questions, but argued that without additional inquiry, the juror's conduct must be considered prejudicial, and she should be excused. The prosecutor informed the court that K.F. had been walking past his office with an investigator when the investigator stopped to ask the prosecutor if he was in trial. During the conversation, it was revealed that K.F. had spoken to a juror, and K.F. was reluctant to give the name of the juror. The prosecutor "pressed her on it" because he wanted to tell the court about the interaction. The prosecutor thought K.F. was embarrassed due to the nature of the comment.

After defense counsel renewed his request for additional questioning, the court brought the juror back in. The court asked the juror what she recalled about the conversation with K.F. regarding the parties involved in the case. The juror said that K.F. asked her how jury duty was going and the juror said fine, except parking was difficult. The juror also told K.F. that "some guy started coming in the room that reminds me of Rob Gronkowski." The juror explained to K.F. that Gronkowski was "a good looking football player." The court asked the juror if there were any other conversations where anyone involved in the trial was discussed. The juror replied, "No. Not at all." The court then asked, "Anything about any of that you feel is going to have any influence on you in this case?" The juror responded no. The court asked her whether "the fact that one of the witnesses looks a little bit like Rob Gronkowski" is going to influence the way she look at that witness. She responded no.

Defense counsel then renewed his motion to excuse the juror. The court denied the motion, finding "there was a single conversation and it was innocuous and there is no likelihood of any prejudice." The court

5

subsequently cited *People v. Belmontes* (1988) 45 Cal.3d 744, and *People v. Siripongs* (1988) 45 Cal.3d 548, in support of its finding that the interaction between K.F. and the juror was "social in nature" and "clearly demonstrates there was no prejudice." Defense counsel argued that those cases did not involve a juror's commentary to a member of the district attorney's office about a witness in the case who was an agent of the state. Defense counsel also argued that a juror's failure to follow the court's instructions is presumed prejudicial. The court agreed and stated that a juror's failure to follow instructions was "presumed prejudicial." The court responded, however, that once it holds a hearing, "the presumption can be rebutted by a demonstration that there was no prejudice," and that "is what my finding is here." The court further explained that the juror "didn't really know who it was," other than "someone associated with the case."

B. *Relevant Legal Principles*

We review the court's decision for abuse of discretion. (*People v. Holloway* (2004) 33 Cal.4th 96, 124–125 (*Holloway*).) We will not find error in the court's decision unless the record shows as a demonstrable reality the juror was unable to perform her duty. (§ 1089; *People v. Martinez* (2010) 47 Cal.4th 911, 943.)

A defendant accused of a crime has a constitutional right to a trial by unbiased, impartial jurors. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16; *Irvin v. Dowd* (1961) 366 U.S. 717, 722; *In re Hitchings* (1993) 6 Cal.4th 97, 110 (*Hitchings*).) An impartial jury is one in which no member has been improperly influenced and each member is capable of deciding and willing to decide the case solely on the evidence before it. (*In re Hamilton* (1999) 20 Cal.4th 273, 293–294.) Upon a showing of good cause, section 1089

6

authorizes a court to discharge a juror who is "found to be unable to perform his or her duty . . . ."

" 'A sitting juror's actual bias, which would have supported a challenge for cause, renders [her] "unable to perform [her] duty" and thus subject to discharge and substitution . . . .' " (*People v. Lomax* (2010) 49 Cal.4th 530, 589.) " 'Actual bias' in this context is defined as 'the existence of a state of mind on the part of the juror . . . [that would] prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party.' " (*People v. Nesler* (1997) 16 Cal.4th 561, 581.) "When a court is informed of allegations which, if proven true, would constitute good cause for a juror's removal, a hearing is required." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1051, italics omitted.)

Jurors must be admonished not to "converse . . . with anyone else . . . on any subject connected with the trial." (§ 1122, subd. (a)(1).) "[A]ny unauthorized communication between a juror and a nonjuror regarding the matter pending before the jury is misconduct and presumptively prejudicial." (*People v. Merriman* (2014) 60 Cal.4th 1, 98.) The prosecution must rebut the presumption by demonstrating "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment." (*People v. Clair* (1992) 2 Cal.4th 629, 668.) A juror's misconduct creates a rebuttable presumption of prejudice, but the presumption is rebutted if the record shows the nature of the misconduct and the surrounding circumstances were such that there was no reasonable probability of prejudice. (*Hitchings, supra,* 6 Cal.4th at pp. 118–119.) Where the misconduct is " ' " 'of such a trifling nature that it could not in the nature of things have been prejudicial to the moving party and . . . that the fairness of the trial has been in no way affected by such impropriety,' " ' " the presumption of prejudice is rebutted.

7

(*People v. Stewart* (2004) 33 Cal.4th 425, 510 (*Stewart*), quoting *People v. Miranda* (1987) 44 Cal.3d 57, 117–118.) As our Supreme Court observed in *In re Carpenter* (1995) 9 Cal.4th 634, "The jury system is fundamentally human. . . . If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias. To demand theoretical perfection from every juror during the course of a trial is unrealistic." (*Id*. at pp. 654–655.)

" 'On appeal, . . . whether juror misconduct was prejudicial presents a mixed question of law and fact " 'subject to an appellate court's independent determination.' " [Citation.]' " (*People v. Weatherton* (2014) 59 Cal.4th 589, 598. An appellate court accepts the trial court's factual findings and credibility determinations if they are supported by substantial evidence. (*Ibid*.)

Although we review for abuse of discretion the trial court's ruling whether to discharge a juror pursuant to section 1089, "we have made clear that such review involves a 'heightened standard [that] more fully reflects an appellate court's obligation to protect a Zile's fundamental rights to due process and to a fair trial by an unbiased jury.' [Citations.] Specifically, the juror's 'inability to perform' his or her duty 'must appear in the record as a demonstrable reality.' [Citations.]" (*People v. Armstrong* (2016) 1 Cal.5th 432, 450.)

Applying this heightened standard of review, we conclude that the trial court did not abuse its discretion.

C. *Analysis*

Zile contends the court prejudicially erred and deprived him of his constitutional right to a trial by an impartial jury when it determined the juror had not committed prejudicial misconduct.

8

The juror failed to comply with the court's instructions "not to talk to anyone about any of the people involved in the case, including any of the attorneys, witnesses, or parties." The comments by the juror were misconduct. (§ 1122, subd. (a)(1) [jurors must not converse with anyone else on any subject connected with the trial].) Although such misconduct creates a rebuttable presumption of prejudice, reversal is not required unless there is a substantial likelihood one or more jurors were improperly influenced by bias. (*Holloway*, *supra*, 33 Cal.4th at p. 125.) "Where the misconduct is not 'inherently likely' to have affected the vote of any of the jurors, prejudice is not shown." (*People v. Hord* (1993) 15 Cal.App.4th 711, 727 (*Hord*).)

We agree with the court's conclusion the misconduct was "innocuous" and that there was no "prejudice," and thus we conclude the court did not err in denying Zile's motion to discharge. Upon learning about the juror's conversation with K.F., the court properly conducted a hearing to determine what had occurred. As the judge of credibility, the trial court was entitled to credit the juror's and K.F.'s description of their conversation. The court "is afforded broad discretion in deciding whether and how to conduct an inquiry to determine whether a juror should be discharged. [Citations.] Our assessment of the adequacy of a court's inquiry into juror misconduct is deferential: . . . except when bias is apparent from the record, the trial judge is in the best position to assess the juror's state of mind during questioning." (*People v. Clark* (2011) 52 Cal.4th 856, 971.) Here, the court questioned the juror and K.F. about their conversation and both gave consistent accounts. The court had the opportunity to observe their demeanor, assess their credibility during the questioning and determine that the testimony was "accurate." We do not reweigh the court's credibility determinations. (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 75 ["a reviewing court defers to

9

the factual determinations the trial court makes when assessing the credibility of the jurors"].)

Based on that inquiry, the court found the juror had talked to K.F. and had commented about the appearance of a government witness, it was not about "the merits of the case" or "credibility of a witness or someone who might be a witness," and it "was a relatively brief and innocuous comment." The court also determined that the juror did not have any other conversations where anyone involved in the trial was brought up or discussed, that it was a "single conversation" and there was "no likelihood of any prejudice." Substantial evidence supports these findings. Because of the court's determination the comments were "social in nature" and "clearly demonstrate[d] . . . no prejudice," the presumption of prejudice had been overcome.

Indeed, the comments by the juror were not inherently likely to have affected the vote of the juror because they were brief and fleeting. Such transitory comments "are normally innocuous, particularly when a comment stands alone without any further discussion." (*Hord, supra,* 15 Cal.App.4th at p. 728; *accord, People v. Avila* (2009) 46 Cal.4th 680, 727.) Unlike juror misconduct arising from receiving evidence out of court, concealing bias on voir dire, or conducting experiments, here the nature of the misconduct was sufficiently minimal that it " ' "could not in the nature of things have been prejudicial" ' " (*Stewart, supra,* 33 Cal.4th at p. 510) to Zile or have affected the fairness of the trial.

The misconduct in this case is akin to that in *Stewart, supra,* 33 Cal.4th at page 510, in which a juror asserted in a declaration: "2. During a break in the testimony of witness Jackie Coghlan, I saw Ms. Coghlan in the ladies restroom; [¶] 3. While in the restroom, I said to Ms. Coghlan something to the

10

effect of [¶] 'I know we're not suppose[d] to have any contact but I just wanted to tell you're [*sic*] a very nice looking (or attractive) lady.' [¶] 4. I have no idea what she said after that because I walked out the door. I know she said something back but I didn't hear it because I went out the door. [¶] 5. This brief contact did not in any way affect my ability to be fair and impartial in this case." The California Supreme Court described that misconduct as "a juror's technical violation of the court's admonition not to discuss the case with nonjurors [that] was ' "trifling' misconduct" ' that could not have prejudiced the defendant." (*People v. Merriman, supra,* 60 Cal.4th at p. 98.) Zile's attempt to distinguish cases fails to change our conclusion. (*See, e.g., Stewart, supra,* 33 Cal.4th at p. 511 [concluding that although a juror committed misconduct in making a comment to a witness about her appearance, it was "trifling" and not likely to influence the juror]; *People v. Loot* (1998) 63 Cal.App.4th 694, 698 [concluding that although a juror committed misconduct in discussing the prosecutor's personal life, the resulting presumption of prejudice was rebutted].)

We conclude that the court did not err by denying the motion because the presumption of prejudice from juror misconduct was rebutted. The court thoroughly investigated the incident by interviewing K.F. and the juror separately, and ascertained that the misconduct involved a brief conversation about a trifling topic unrelated to the merits of the case. The court determined after the questioning that the juror's brief comments reflected "girl talk among two girls who have been friends and clearly demonstrates there was no prejudice." The juror assured the court that nothing about the way she felt would have any influence on her in the case, including how she looks at the witness. The court advised the juror against talking with K.F. or anybody associated with the case for the rest of the trial. We presume the

11

juror followed the instructions. (*People v. Frederickson* (2020) 8 Cal.5th 963, 1026.) On this record, we cannot fault the court's determination. Accordingly, we conclude Zile has not established the court abused its discretion by finding the juror had not committed prejudicial misconduct.

## II.

### *Failure to Give Gross Vehicular Manslaughter Jury Instruction*

Zile contends the trial court erred when it failed to instruct the jury on gross vehicular manslaughter as a lesser included offense of murder.

#### A. *Additional Procedural Background*

Zile asked the trial court to instruct the jury on voluntary and involuntary manslaughter. The prosecutor objected. The trial court denied Zile's request based on "the current state of the law," finding "the definitions of manslaughter for both voluntary and involuntary do not apply to the situation in which a death results from driving of a motor vehicle."

Following the prosecutor's closing argument, Zile requested that the court instruct the jury on vehicular manslaughter. The court declined Zile's request, finding that "vehicular manslaughter or voluntary manslaughter or involuntary manslaughter are not properly lesser included offenses" of murder.

#### B. *Analysis*

A trial court must instruct on a necessarily included lesser offense if there is substantial evidence that the defendant is guilty only of the lesser and not the greater. (*People v. Birks* (1998) 19 Cal.4th 108, 118 (*Birks*).) However, a trial court has no duty to instruct on lesser offenses that are *not* necessarily included in the charged offense. "Rather, a jury need only be instructed on offenses that the prosecution *actually charged* either explicitly or implicitly (because they were necessarily included within explicitly

charged offenses).”  (*People v. Hicks* (2017) 4 Cal.5th 203, 211, italics added (*Hicks*).)

To determine whether one crime is necessarily included in another, courts must apply either the statutory elements test or the accusatory pleading test.  (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)  Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.  (*Ibid.*)  Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.  (*Ibid.*)  In a case like this one, where the accusatory pleading merely incorporates the statutory definition of the charged offense without referring to the particular facts, the court must apply the elements test.  (*People v. Robinson* (2016) 63 Cal.4th 200, 207.)

As Zile acknowledges, the California Supreme Court has ruled that the offense of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) “is not a lesser included offense within murder.”  (*People v. Sanchez* (2001) 24 Cal.4th 983, 988–992 (*Sanchez*).)  Applying the elements test, the court reasoned that “the statutory elements of murder do not include all the elements of the lesser offense” because “[g]ross vehicular manslaughter while intoxicated requires proof of elements that need not be proved when the charge is murder, namely, use of a vehicle and intoxication.”  (*Id.* at p. 989.)

The reasoning of *Sanchez* applies equally to gross vehicular manslaughter under section 192, subdivision (c)(1).  The statutory elements of murder do not include all the elements of gross vehicular manslaughter because gross vehicular manslaughter requires proof of an element not required for murder, namely, “driving a vehicle.”  (§ 192, subd. (c)(1).)  Under

13

*Sanchez*, therefore, gross vehicular manslaughter is not a lesser included offense of murder under the elements test.  (*People v. Bettasso* (2020) 49 Cal.App.5th 1050, 1057–1060; *People v. Wolfe* (2018) 20 Cal.App.5th 673, 685–686 (*Wolfe*).)

Zile argues that *Sanchez* creates a substantial injustice for him because it allowed the prosecutor to impose an " 'all-or-nothing' choice that required [the jury] to choose between a conviction for murder or a complete acquittal." He also acknowledges that we are bound by the Supreme Court's decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  We therefore join our colleagues in *Bettasso* and *Wolfe* in holding that gross vehicular manslaughter is not a lesser included offense of murder under *Sanchez*.  For this reason, the trial court committed no error by failing to instruct the jury on gross vehicular manslaughter.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.